**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| DIONNE M. HOFFMAN, )<br>)<br>Petitioner, )<br>)<br>)<br>v. )<br>)<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Respondent. )<br>_____) | Case No. CV 06-353-N-LMB<br><br><br>**MEMORANDUM DECISION<br>AND ORDER** |

Currently pending before the Court is Dionne M. Hoffman's Petition for Review, seeking review of the Social Security Administration's decision to deny her claims for disability insurance benefits and supplemental security income disability benefits. The action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

**I.**

**ADMINISTRATIVE PROCEEDINGS**

On May 31, 2003, Dionne M. Hoffman ("Petitioner") applied for Disability Insurance Benefits and Supplemental Security Income benefits. (AR 62-64; 254-256). Petitioner's applications were denied. (AR 23-30; 257-263). Following reconsideration, Petitioner's applications were again denied. (AR 33-37; 264). On December 16, 2003, Petitioner requested a hearing before an Administrative Law Judge ("ALJ"). (AR 38-39). ALJ Mary Bennett Reed

**MEMORANDUM DECISION AND ORDER - 1**

held a hearing on May 5, 2005 at which time Petitioner appeared and testified.  (AR 14).  Although Petitioner was fully apprised of the right to representation, she chose to proceed without a representative.  *Id*.  Also appearing and testifying was Deborah N. Lapoint, a vocational expert.  *Id*.

On February 22, 2006, the ALJ issued a decision denying Petitioner's claim.  (AR 11-22).  Specifically, the ALJ found that Petitioner has not been under a "disability" within the meaning of the Social Security Act.  (AR 22).  Petitioner timely requested review by the Appeals Council on March 14, 2006.  (AR 10).  On July 11, 2006, the Appeals Council denied Petitioner's Request for Review of Hearing Decision/Order (AR 6-9), making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner timely filed this instant action.  Petitioner argues that the ALJ erred by (1) failing to state clear and convincing reasons for rejecting Petitioner's testimony; (2) not properly assessing Petitioner's obesity; and (3) not properly assessing Petitioner's depression.  Pet.'s Brief, p. 2 (Docket No. 10).  Petitioner also argues that, as an unrepresented claimant, the ALJ was under a heightened duty to investigate her impairments.  *Id*.  Petitioner therefore requests that the ALJ's decision be reversed and/or remanded to Social Security for further proceedings.  *Id*. at p. 12.

## II.

### STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon Petitioner to establish an entitlement to disability benefits.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  In evaluating the evidence at an administrative hearing, the ALJ must follow a five-part sequential process.  20

**MEMORANDUM DECISION AND ORDER - 2**

C.F.R. §§ 404.1520, 416.920 (2005).  The second part of that process involves a determination regarding whether the claimant has a "severe impairment."  20 C.F.R. § 416.905(a) (2006).  If no "severe" impairment is found, the claimant will be found not to be disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

To be upheld, the Commissioner's decision must be supported by substantial evidence and be based on proper legal standards.  42 U.S.C. § 405(g) (2005); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.

**MEMORANDUM DECISION AND ORDER - 3**

The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987). Reviewing federal courts must bear in mind that the Social Security Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases." *Id*. at 1095 (citation omitted).

## III.

## DISCUSSION

**A.     Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920 (1997).

**MEMORANDUM DECISION AND ORDER - 4**

The first step in the sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the answer is in the affirmative, disability benefits are denied. 20 C.F.R. § 404.1520(b). In the instant action, the ALJ concluded that Petitioner has engaged in substantial gainful activity since the alleged onset of disability up through March 31, 2003, but not thereafter. (AR 21).

The second step requires the ALJ to determine whether the claimant has a medically-severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the answer is in the negative, disability benefits are denied. 20 C.F.R. § 404.1520(c). Here, the ALJ found that Petitioner's vision impairment, obesity, and degenerative disc disease are to be considered "severe" under the applicable regulations. (AR 21).

The third step in the evaluation process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the answer is in the affirmative, the claimant is disabled and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). In this respect, the ALJ concluded that Petitioner's medically-determinable impairments do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. (AR 21).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). In this respect, the ALJ concluded that Petitioner has the following residual functional capacity to perform light exertional work: she can lift/carry twenty (20) pounds occasionally and ten (10) pounds frequently; she can stand and walk six (6) hours

**MEMORANDUM DECISION AND ORDER - 5**

out of an eight (8)-hour workday; and she can sit for six (6) hours out of an eight (8)-hour workday with normal breaks.  (AR 21).  Further, according to the ALJ, Petitioner has the following non-exertional limitations: she can only occasionally balance, stoop, kneel, crouch, and crawl; she can only occasionally climb stairs and ramps; she must avoid climbing ropes, ladders, and scaffolds; and she must avoid constant exposure to vibration and hazards.  *Id*.  The ALJ also pointed out that Petitioner cannot perform work that requires fine visual acuity.  *Id*.  Finally, the ALJ concluded that Petitioner is unable to perform any of her past relevant work.  *Id*.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his/her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  In this respect, the ALJ found that Petitioner has the residual functional capacity to perform a significant range of light work and that, although Petitioner is not able to perform the full range of light work, there is a significant number of jobs in the national economy that she could perform, including sales clerk, cleaner, housekeeper, recreation aide, and taproom attendant.  (AR 22).  Therefore, the ALJ concluded that Petitioner was not under a disability as defined in the Social Security Act at any time through the date of the February 22, 2006 decision.  *Id*.

**B.**     **Analysis**

Petitioner challenges the ALJ's denial of disability benefits in two separate respects.  First, Petitioner argues that the ALJ did not provide clear and convincing evidence for rejecting her own testimony.  Pet.'s Brief, p. 2 (Docket No. 10).  Second, Petitioner argues that the ALJ

**MEMORANDUM DECISION AND ORDER - 6**

did not properly assess and/or consider her obesity or depression conditions when denying disability benefits. *Id*. This second concern, according to Petitioner, is magnified when considering that Petitioner was not represented at the May 5, 2005 hearing. *Id*.

     1.     <u>Petitioner's Credibility</u>

Petitioner takes issue with the ALJ's conclusion that her testimony concerning the limiting effects of her impairments/symptoms are "not entirely credible . . . . " *Id*. at p. 8. In this respect, the ALJ stated:

> The claimant's statements concerning her impairments and their impact on her ability to work are not entirely credible in light of the claimant's own description of her activities and life style, discrepancies between the claimant's assertions and information contained in the documentary reports, the degree of medical treatment required, the reports of the treating and examining practitioners, the medical history, the findings made on examination, and the claimant's assertions concerning her ability to work.

(AR 18). The ALJ is in the best position to make such credibility determinations and, for this reason, the ALJ's credibility determinations are entitled to great weight. *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990). However, although the ALJ is responsible for determining Petitioner's credibility, she cannot reject her testimony without giving clear and convincing reasons. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). Here, the ALJ provided sufficient reasons for calling into question Petitioner's credibility.

First, with respect to Petitioner's vision problems, the ALJ incorporated a litany of evidence contradicting Petitioner's alleged symptomology. For example, Dr. James Lea, a neurologist, noted that, as of June 6, 2002, Petitioner's "visual fields [were] intact" and her visual acuity was 20/20 in the right eye and 20/25 in the left eye. (AR 155). Based on the

**MEMORANDUM DECISION AND ORDER - 7**

record, Dr. Lea's findings are not an isolated observance. On July 2, 2003, Dr. Justin Stromo Gibson of North Idaho Eye Institute concluded that Petitioner's "opthalmologic examination shows her to be back to essentially normal vision" with a "resolution of her optic nerve edema." (AR 163). Most telling, however, is Dr. Robert Mulvihill's June 20, 2005 (post-hearing) statement that Petitioner has 20/20 vision in each eye. (AR 231).[1] Separately, it should be pointed out that (1) Plaintiff has passed the visual portion of her driver's test (AR 306-307); (2) spends upwards of four to six hours watching television (AR 107); (3) reads books, magazines, newspapers, and educational materials (AR 107); (4) "love[s] [her] computer" (AR 108); and (5) "can't do anything but watch sports on TV" (AR 108). The third-party medical evidence within the record, combined with Petitioner's own recitation

---

[1] Dr. Mulvihill goes on to offer opinions in stark contrast to Petitioner's testimony when he responded to the following four interrogatories:

1. The claimant has alleged that she has no peripheral vision on either the right or the left side. Do your examinations confirm that this is the case? <u>Answer</u>: No.

2. The claimant has alleged that she has difficulty reading because there would be blank spots in her vision which would require her to shift her gaze to see effectively. Do your examinations confirm that this is the case? <u>Answer</u>: No.

3. The claimant has alleged that she has difficulties driving because of her vision? In your opinion can the claimant safely drive a motor vehicle? <u>Answer</u>: Yes.

4. The claimant has alleged that she cannot work in areas where there is bright light because it decreases her vision (for example, near a window). Do your examinations confirm that this is the case? <u>Answer</u>: No.

(AR 231).

**MEMORANDUM DECISION AND ORDER - 8**

of her visual abilities, suggest that Petitioner may not have been entirely objective when testifying before the ALJ on May 5, 2005. The ALJ appropriately incorporated these realities when she questioned Petitioner's credibility. (AR18-19).

Second, regarding Petitioner's low back pain and degenerative disc disorder, the ALJ considered an extensive analysis of the medical evidence - doctor-by-doctor. (AR 17-18). For instance, Dr. Lea acknowledged that an MRI of Petitioner's brain demonstrated no abnormalities (AR 153); a motor examination revealed normal tone, strength, and bulk throughout (AR 154); a mental status examination was normal (AR 154); and gait and station were unremarkable (AR 154).[2] Similarly, Dr. William F. Ganz, a neurosurgeon, found Petitioner to be neurologically intact and, as of May 2003, "certainly would not recommend any surgical intervention in this patient." (AR 136-137). Dr. Glenn L. Keiper also found Petitioner to maintain 5/5 strength in the upper extremities in all muscles tested and 5/5 strength in the lower extremities in all muscles tested. (AR 189). These findings were later shared by Dr. Keiper's colleague, Catherine Rojo, nearly two years later. (AR 222). According to the ALJ, the apparent fact that Petitioner has no verifiable weakness or numbness in her extremities, contradicts Petitioner's purported limitations in sitting, standing, walking, or carrying. (AR 18). Again, the ALJ appropriately incorporated these findings when he questioned Petitioner's credibility. (AR 18-19).

Together, these reasons offer clear and convincing explanations as to why the ALJ did not find Petitioner entirely credible. This is not to say, however, that this Court conclusively finds Petitioner not to be disabled under the applicable rules and regulations; indeed, Petitioner

---

[2] While Dr. Lea made these observations in the Summer of 2002, his observances in these respects did not change markedly during the following year. *See* Ex. 3F (AR 153-162).

**MEMORANDUM DECISION AND ORDER - 9**

appropriately identifies conflicting evidence in support of her position. While such conflicting evidence may not have been given the weight Petitioner would have preferred, it is clear that the ALJ's decision to doubt Petitioner's credibility in denying disability benefits is not without clear and convincing reasons for doing so. As required by controlling law, the ALJ will not be second-guessed here. *See Batson v. Comm'r of Social Security Admin.*, 359 F.3d 1190 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." (Internal citations omitted)). Therefore, the Court will not substitute its judgment when the evidence in the record can be applied to support the ALJ's findings.

2.  Petitioner's Obesity and Depression

The ALJ found that the medical evidence revealed that Petitioner suffers from obesity, an impairment that is considered "severe" under the applicable regulations. (AR 16). Yet, Petitioner argues that the ALJ failed to properly evaluate the Petitioner's restrictions secondary to her obesity. Pet.'s Brief, pp. 10-11 (Docket No. 10). Petitioner also claims that the ALJ had a duty to investigate the Petitioner's claims of depression, but improperly did so in denying Petitioner disability benefits. *Id*. at pp. 11-12. Related to both objections, Petitioner argues that more scrutiny was needed given Petitioner's *pro se* status.

Preliminarily, it should be recognized that the ALJ, in permitting Petitioner to proceed without representation, allowed Petitioner to explain in her own words why she was unable to work. (AR 296). Implicit within this accommodation is the expectation that Petitioner would focus on every reason why she is unable to work, including her obesity and depression

**MEMORANDUM DECISION AND ORDER - 10**

conditions. (AR 296 ("And just because I don't ask you about something, if you think there's an issue out there, or a problem you're having, [that affects] your ability to work, to bring that [issue] to my attention.")). Still, Petitioner's testimony was dominated by her alleged problems with her vision and her back. It cannot be said that the ALJ ignored all pertinent factors when it was Petitioner herself who provided the account.

Nevertheless, the ALJ properly considered Petitioner's claims of obesity and depression. While Petitioner insists that the ALJ "is required to consider obesity in deciding a Petitioner's residual functional capacity" (Pet.'s Brief, p. 10 (Docket No. 10)), she apparently ignores Exhibit 5F to the record - the Physical Residual Functional Capacity Assessment (the "Assessment") (AR 165-172). Importantly, the Assessment identifies "disc bulge L5-S1, L4-5" as the primary diagnosis; "intracranial hypertension" as the secondary diagnosis; and "obesity" as the other alleged impairment. (AR 165). In other words, Petitioner's obesity was, in fact, considered by the ALJ when the ALJ reviewed and incorporated the findings of the Assessment into her February 22, 2006 Decision. (AR 19). It is obvious that the ALJ adopted the Assessment's exertional limitations (AR 166) when commenting on Petitioner's physical capabilities. (AR 19). It is also clear that the ALJ considered Petitioner's obesity when reaching these conclusions. (AR 19) ("Because of her obesity and degenerative disc disease[,] she can . . . . [ALJ goes on to list Petitioner's limitations].")

Likewise, the ALJ's dismissal of Petitioner's alleged depression is not in error when considering the balance of the record. The ALJ is not disputing that Petitioner suffers from depression; rather, the ALJ simply does not find Petitioner's depression to rise the requisite level of debilitation. (AR 16 & 19). To this end, the ALJ commented that Petitioner's depression

**MEMORANDUM DECISION AND ORDER - 11**

coincided with a period in 2002 when she was still working, thus suggesting that Petitioner's depression was not severe, as it did not result in any limitation in her ability to perform work-related functions. (AR 16). Even after Plaintiff stopped working,[3] the ALJ properly took into account Petitioner's depressive condition by considering Exhibit 6F to the record - the Psychiatric Review Technique (the "Technique"). (AR 173-186). Within the Technique, Dr. Maximo J. Callao did not consider Petitioner's depression to be severe. (AR 173). Moreover, according to Dr. Callao, Petitioner's depressive disorder caused only mild limitations on daily living, social functioning, concentration, persistence, and/or pace; it contributed to no episodes of decompensation for any extended duration. (AR 183). At most, therefore, Petitioner has been diagnosed with depression for which she is taking medication. Yet, she has not received psychiatric treatment or counseling and has no history of inpatient treatment. (AR 185).

With this backdrop, there is substantial evidence to support the ALJ's handling of Petitioner's obesity and depression and related denial of disability benefits. As a result, the ALJ's Decision will not be disturbed here, even though reasonable minds could find a different result when analyzing the evidence contained in the record.

## IV.

## CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739

---

[3] It is undisputed that Petitioner was prescribed Zoloft for her depression in 2002; yet, in October 2003 (over six (6) months after Petitioner's April 1, 2003 date of alleged disability), Petitioner stated to Dr. Glenn L. Keiper that she did not have a history of depression. (AR 188).

**MEMORANDUM DECISION AND ORDER - 12**

F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

I am of the opinion that the evidence upon which the ALJ relied can reasonably and rationally support her well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation.  In fact, if I had been the finder-of-fact, I may well have reached a different conclusion; but that is not the function of a federal judge reviewing a Social Security determination.

Accordingly, the ALJ's decisions as to Petitioner's credibility, as well as the ALJ's consideration of Petitioner's obesity and depression, were based on proper legal standards and supported by substantial evidence.  Therefore, I conclude that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

Accordingly, the Commissioner's decision is affirmed.

## VII.

## ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety with prejudice.



DATED:  **March 6, 2008**.

Honorable Larry M. Boyle
United States District Court

**MEMORANDUM DECISION AND ORDER - 13**